IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

WORLD TRAVEL, INC., JAMES A.
WELLS, AND MIGUEL PAREDES,

Plaintiffs,

v.

HANOVER INSURANCE COMPANY,

Defendants.

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 22146702
2023MR000219
FILEDATE: 4/4/2023 12:37 PM
Date Submitted: 4/4/2023 12:37 PM
Date Accepted: 4/4/2023 4:27 PM
DW

Case No.: 2023MR000219

**JURY DEMAND**

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiffs World Travel, Inc. ("World Travel"), James A. Wells, and Miguel Paredes, by and through their attorneys, Burke, Warren, MacKay & Serritella, P.C., and for their Complaint for Declaratory Judgment and Other Relief against Defendant Hanover Insurance Company ("Hanover"), alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff World Travel purchased an insurance policy from Hanover (the "Hanover Policy"), expecting that Hanover would appoint a competent, qualified attorney to defend World Travel and its insureds in the event that they were sued for a covered claim. However, when World Travel's Chairman, James A. Wells ("Wells"), along with Miguel Paredes, the trustee of World Travel's Employee Stock Ownership Plan (the "World Travel ESOP") were sued in 2021 in complicated, class action litigation relating to the valuation of the World Travel ESOP during a 2017 transaction (the "World Travel Claim"), Hanover wholly failed to satisfy its duty to defend under the Hanover Policy.

2.     Hanover was unable and/or unwilling to appoint competent and qualified counsel, experienced in the specific type of litigation that Wells and Paredes faced, rather asking them to accept counsel with little to no experience working on such cases. After World Travel rejected the

1

EXHIBIT A

appointment of Hanover's preferred counsel after an interview in which he admitted he was unfamiliar with this type of litigation, would need to hire experts to educate him on the issues, and would need several months to get up to speed, Hanover sent World Travel a virtual menu of nearly 20 attorneys with an instruction to "pick one." While Hanover has the obligation to appoint a competent, qualified attorney to represent its insured under the Hanover Policy and is not permitted to put the burden on its insured to interview numerous attorneys and then "pick one," none of these attorneys represented that they had experience in this type of complicated, atypical case, which was wholly unacceptable.

3.      Therefore, Wells and Paredes, in their own best interests, chose two of the small number of law firms who are very experienced in this niche practice area to represent them in the underlying litigation, and asked Hanover to agree to their representation. Without providing adequate consideration or a reasoned explanation, Hanover simply said no and denied coverage for the World Travel Claim under the Hanover Policy. Hanover did this, despite the fact, that any funds spent on defense costs would reduce the Hanover Policy's $3 Million limit of liability. As such, if Wells and Paredes choose to pay competent, qualified and experienced attorneys more than Hanover would typically pay panel counsel (or at an otherwise agreed upon rate), those payments reduce the available limit of liability to use toward settlement or judgment – coverage for which World Travel has paid and is entitled to use to defend a claim.

4.      By failing to appoint a competent, qualified attorney to represent Wells and Paredes in the underlying litigation and wrongfully denying coverage for the World Travel Claim, Hanover breached its duty to defend them under the Hanover Policy. By failing to put its insureds' best interests ahead of its own and wrongfully denying coverage for the World Travel Claim, Hanover breached its implied duty of good faith and fair dealing under the Hanover Policy. By refusing to

EXHIBIT A

pay Wells' and Paredes' chosen counsel from the funds available in the Hanover Policy for such litigation and wrongfully denying coverage for the World Travel Claim, Hanover breached its obligations under the Hanover Policy. By refusing to participate in the settlement of the underlying action, which Wells and Paredes undertook in their best interests due to its wrongful denial of coverage for the World Travel Claim, Hanover breached its obligations under the Hanover Policy.

5.      Therefore, World Travel, Wells and Paredes seek a declaration that Hanover has a duty to defend and indemnify Wells and Paredes in the underlying litigation, including to pay for their defense costs incurred with their chosen counsel and the amount of settlement, up to the limit of liability under the Hanover Policy. World Travel, Wells and Paredes further request judgment against Hanover for breach of contract, in an amount to be determined at trial, for failing to appoint competent, qualified counsel as obligated under the Hanover Policy. World Travel, Wells and Paredes further request a judgment for bad faith and their damages, attorneys' fees and costs of this action.

### PARTIES

6.      Plaintiff World Travel, Inc. is a Pennsylvania corporation with its principal place of business located in Exton, Chester County, Pennsylvania.

7.      Plaintiff James A. Wells is a resident and citizen of Pennsylvania.

8.      Plaintiff Miguel Paredes is a resident and citizen of California.

9.      Defendant Hanover Insurance Company is a New Hampshire corporation with its principal place of business located in Worcester, Massachusetts and its principal Illinois office located in Itasca, DuPage County, Illinois.

### JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 735 ILCS 5/2-701. This Court also has jurisdiction pursuant to 735 ILCS 5/2-209(a)(1) and (b)(4) because Hanover transacts business

3

EXHIBIT A

within the State of Illinois, including through persons who wrongfully denied coverage for insurance on an insurance policy issued to World Travel.

11.     Venue is proper in DuPage County, pursuant to 735 ILCS 5/2-101, because Hanover's principal office in Illinois is located in DuPage County, in which Hanover's wrongful denial of insurance coverage and breach of contract occurred.

## BACKGROUND FACTS

**A.**     **World Travel Obtains the Hanover Policy**

12.     World Travel is a global mid-market leader in corporate travel management based in Exton, Pennsylvania.

13.     On October 1, 2020, Hanover issued an insurance policy to World Travel, Policy Number LHY-D710297-02, for the Policy Period of October 1, 2020 through October 1, 2021 (the "Hanover Policy" is attached hereto as Exhibit 1).

14.     The Hanover Policy contains several Coverage Parts, including: (1) Directors & Officers and Entity Liability Coverage Part; (2) Employment Practices Liability Coverage Part; (3) Fiduciary Liability Coverage Part; and (4) Crime Coverage Part.

15.     In relevant part, the Fiduciary Liability Coverage Part of the Hanover Policy contains a $3,000,000 maximum aggregate limit of liability. The Fiduciary Liability Coverage Part applies only to claims first made against the insureds during the Policy Period or any applicable extended reporting period.

16.     Pursuant to the Fiduciary Liability Coverage Part, Hanover will pay on behalf of the Insured, Loss which the Insured is legally obligated to pay due to Claims first made against the Insured during the Policy Period.

17.     Pursuant to the Fiduciary Liability Coverage Part, "Loss" means, among other things, Defense Expenses and the amount the Insured is legally obligated to pay as a result of a

4

EXHIBIT A

claim including: (A) Monetary judgments, awards or settlements, pre-judgment interest, back and front pay, compensatory damages…."

18.    Pursuant to the Fiduciary Liability Coverage Part, "Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by the Insurer or the Insured (other than regular or overtime wages, salaries, fees or benefits of Insured Individuals) in the investigation, defense, settlement and appeal of a Claim…"

19.    Pursuant to the Fiduciary Liability Coverage Part, "Insured" means any Benefit Plan, Insured Individual or Insured Entity.

20.    Pursuant to the Fiduciary Liability Coverage Part, an Insured Individual means any:

   i. Past, present or future "Executive" or "Employee" of an "Insured Entity;"

   ii. Past, present or future employee of a "Benefit Plan;"

   iii. Past, present or future natural person trustee of an "Insured Entity" or a "Benefit Plan."

21.    Pursuant to the Hanover Policy, "Executive" means any natural person who is, was, or shall become…a duly-appointed director, officer, manager, in-house general counsel or trustee, of the Insured Entity.

22.    Pursuant to the Hanover Policy, an "Insured Entity" means World Travel and any Subsidiary.

23.    Pursuant to the Fiduciary Liability Coverage Part, a "Benefit Plan" means an Employee Stock Ownership Plan (ESOP), including the World Travel, Inc. ESOP Trust, which is added to the definition of Benefit Plan through Endorsement 2 to the Hanover Policy.

5

EXHIBIT A

24.     Pursuant to the Fiduciary Liability Coverage Part, a "Claim" means, among things, a "Civil proceeding commenced by the service of a complaint or similar proceeding...against an Insured for a Wrongful Act, including any appeal therefrom...."

25.     Pursuant to the Fiduciary Liability Coverage Part, a "Wrongful Act" means any actual or alleged...

> (A) Breach by an Insured, or any individual or entity for whose acts an Insured is legal responsible, of the responsibilities, obligations or duties imposed upon fiduciaries of any Benefit Plan by ERISA or the common or statutory law of the United States;
>
> (B) Negligent act, error or omission by an Insured, or any individual or entity for whose acts an Insured is legally responsible, solely in the Administration of any Insured Benefit Plan; or
>
> (C) Any other matter claimed against an Insured, or any individual or entity for whose acts the Insured is legally responsible, solely by reason of the Insured's service as a fiduciary of any Benefit Plan.

26.     Pursuant to the Fiduciary Liability Coverage Part, Hanover "shall have the right and duty to defend any Claim covered by this Coverage Part even if any allegation of such Claim is groundless, false or fraudulent."

**B.     The *Ahrendsen* Litigation**

27.     On January 1, 2017, World Travel adopted the World Travel, Inc. Employee Stock Ownership Plan (the "World Travel ESOP").

28.     On or about December 20, 2017, the World Travel ESOP purchased all outstanding shares of World Travel common stock to become a 100% employee-owned company (the "ESOP Transaction").

6

EXHIBIT A

29.     At the time of the ESOP Transaction, Plaintiff Miguel Paredes, a natural person, served as Trustee of the World Travel ESOP, representing the World Travel ESOP and its participants in the ESOP Transaction. Paredes is the Founder and President of Prudent Fiduciary Services, LLC ("PFS").

30.     At the time of the ESOP Transaction, Plaintiff James A. Wells was the Chairman of the Board of Directors of World Travel, and its former President and Chief Executive Officer.

31.     On May 11, 2021, Shari Ahrendsen and Barry Clement filed a Complaint on behalf of the World Travel ESOP and similarly situated participants in the World Travel ESOP alleging that PFS, Paredes, James A. Wells, James R. Wells and Richard G. Wells violated ERISA through the effectuation of the ESOP Transaction, by allowing the sale of shares of World Travel at more than their fair market value, to benefit the selling shareholders and harm Plaintiffs Ahrendsen, Clement, similarly situated participants and the World Travel ESOP (the "*Ahrendsen* Complaint"). A copy of the *Ahrendsen* Complaint is attached as Exhibit 2.

32.     The *Ahrendsen* Complaint initiated litigation captioned *Sheri Ahrendsen, et al v. Prudent Fiduciary Services, LLC, et al*, Case No. 2:21-cv-02157-HB in the United States District Court for the Eastern District of Pennsylvania (the "*Ahrendsen* Litigation").

33.     The *Ahrendsen* Complaint alleges that, pursuant to the ESOP Transaction, the World Travel ESOP purchased from selling shareholders, directly or indirectly, 19,860,000 shares of World Travel common stock for $200,753,217, in order to become 100% employee owned.

34.     The *Ahrendsen* Complaint alleges that, pursuant to the ESOP Transaction, the World Travel ESOP entered into a $200,753,217 term loan agreement with World Travel – as such, the ESOP Transaction was financed by World Travel in a fully leveraged transaction, with a

EXHIBIT A

loan bearing interest at an annual nominal rate of 2.64% that was to be repaid over a period of 45 years.

35.     The *Ahrendsen* Complaint alleges wrongdoing in the ESOP Transaction, including but not limited to: (1) the World Travel ESOP paid a control premium for World Travel even though the World Travel ESOP did not obtain control of the World Travel Board; and (2) the World Travel ESOP did not obtain a discount for lack of control, and therefore paid more than fair market value for World Travel to the detriment of the World Travel ESOP.

36.     The *Ahrendsen* Complaint alleges that Paredes, as Trustee, is subject to liability under ERISA for, among other things, a faulty valuation of World Travel in the ESOP Transaction, including through unreasonably optimistic financial projections and insufficient due diligence.

37.     The *Ahrendsen* Complaint further alleges that the World Travel ESOP overpaid for World Travel stock in the ESOP Transaction due to the Trustee's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of World Travel stock in the ESOP Transaction faulty.

38.     The *Ahrendsen* Complaint alleges that Paredes, as Trustee of the World Travel ESOP, is liable to the World Travel ESOP for the difference between the price paid by the World Travel ESOP and the fair market value of World Travel shares at the time of the ESOP Transaction.

39.     The *Ahrendsen* Complaint alleges that the selling shareholders – James A. Wells, James R. Wells and Richard G. Wells (the "Wells Defendants") – are liable to the World Travel ESOP to repay the difference between the price they received and the fair market value of their World Travel shares at the time of the ESOP Transaction.

8

EXHIBIT A

40.     Count I of the *Ahrendsen* Complaint alleges a violation of ERISA Section 406(a)-(b) against PFS and Paredes for causing and engaging in prohibited transactions under ERISA.

41.     Count II of the *Ahrendsen* Complaint alleges a violation of ERISA Section 404(a) against PFS and Paredes for breach of fiduciary duty.

42.     Count III of the *Ahrendsen* Complaint alleges a violation of ERISA Section 410 and 404(a)(1)(A),(B) against PFS and Paredes.

43.     Count IV of the *Ahrendsen* Complaint alleges a violation of 29 USC 1132(a)(3) against selling shareholders James A. Wells, James R. Wells and Richard G. Wells for prohibited transaction under ERISA.

44.     The *Ahrendsen* Complaint further alleges class action allegations pursuant to Fed. R. Civ. P. 23(a) and (b), seeking class certification.

45.     The *Ahrendsen* Litigation is a civil proceeding commenced against Insured Individuals Paredes and James A. Wells (the "Insured Individuals") which alleges a Wrongful Act against them under ERISA.

### C.     Defense Counsel Retention

46.     Prior to the filing of the *Ahrendsen* Complaint on May 11, 2021, World Travel became aware of a notice posted on LinkedIn by a law firm on May 5, 2021, alleging that the World Travel ESOP had overpaid for company stock and offering a free legal consultation to any participants in the World Travel ESOP. World Travel promptly informed Hanover of the notice.

47.     On May 11, 2021, Hanover sent a letter to World Travel, stating that the LinkedIn notice did not constitute a Claim under the Hanover Policy.

48.     At or around that time, upon learning that the *Ahrendsen* Complaint had been filed on May 11, 2021, the Insured Individuals resubmitted a claim to Hanover for coverage under the Hanover Policy (the "World Travel Claim"). The Insured Individuals promptly consulted with

EXHIBIT A

attorneys who have significant experience defending class action claims, like those alleged in the *Ahrendsen* Litigation, against ESOP trustees and selling shareholders/directors relating to the valuation of a company during a share purchase like the ESOP Transaction.

49.     The Insured Individuals wanted to ensure that their best interests were protected by retaining highly qualified and experienced attorneys in this niche practice area. As the Insured Individuals understood, these types of cases are filed by only a few plaintiffs' law firms nationwide, and there are only a handful of highly qualified and experienced attorneys who routinely defend these actions against these types of claims.

50.     World Travel, on behalf of the Wells Defendants, began this process by contacting the attorney who represented the company during the ESOP Transaction and thereafter, now associated with the law firm of Holland & Knight, and therefore, the attorneys with the most knowledge regarding the work completed on the ESOP Transaction.

51.     PFS, on behalf of Paredes, contacted Attorney Lars Golumbic at the Groom Law Group in Washington, D.C., whom they had met at prior ESOP related association conferences and who also has vast experience representing ESOP trustees in these types of action.

52.     Hanover acknowledged coverage of the World Travel Claim for Paredes and James A. Wells in the *Ahrendsen* Litigation under the Hanover Policy.

53.     During a telephone conversation on May 20, 2021, World Travel's Corporate Counsel informed Hanover that it wished to retain the law firm of Holland & Knight to defend the Wells Defendants, and that PFS and Paredes would likely request to retain the Groom Law Group to defend them. Hanover responded that, under the Hanover Policy, Hanover has the right and duty to defend the *Ahrendsen* Litigation, which typically entitles Hanover to select counsel from its approved panel counsel list to defend its insureds.

EXHIBIT A

54.     Hanover responded further, by email, stating that Holland & Knight was not on Hanover's "approved panel counsel list" for fiduciary matters in Pennsylvania and listed six law firms from which World Travel could choose to represent it. At that time, Hanover did not identify any specific lawyers who Hanover believed were experienced and qualified to defend the Insured Individuals in the *Ahrendsen* Litigation.

55.     World Travel's Corporate Counsel asked Hanover to consider adding Holland & Knight and the Groom Law Group to Hanover's approved list. Hanover rejected this request, by email, 16 minutes later.

56.     World Travel's Corporate Counsel asked Hanover to escalate its request to appoint Holland & Knight and the Groom Law Group as counsel to defend the Insured Individuals in the *Ahrendsen* Litigation. World Travel understands that, upon its escalation request, Hanover's claim handling was assigned, at least in part, to Carrie Graziani, a Senior Specialty Claims Manager, based in Hanover's Itasca, Illinois office.

57.     That same day, World Travel's Corporate Counsel expressed her concern with the level of expertise that the six law firms identified by Hanover as approved panel counsel could bring to this sophisticated case alleging ERISA violations relating to an ESOP transaction. World Travel's Corporate Counsel expressed that "[w]e are, quite frankly, very concerned about working with any firm that does not have the expertise in this niche area." World Travel again requested that Hanover make an exception for both Holland & Knight and the Groom Law Group to represent the Insured Individuals, which would be beneficial for both the Insured Individuals and Hanover.

58.     Less than 24 hours after World Travel asked that its request be escalated, Hanover again denied World Travel's request for an exception for both Holland & Knight and the Groom Law Group to represent the Insured Individuals.

EXHIBIT A

59.     Despite Hanover's repeated denial of World Travel's reasonable requests to have Holland & Knight and the Groom Law Group represent the Insured Individuals, without explanation beyond that they were not currently listed on Hanover's "approved panel counsel list," World Travel continued to work with Hanover in good faith to find a reasonable resolution.

60.     On May 21, 2021, Hanover claim representative Tracie Coleman-Tucker admitted that her earlier provision of only law firm names to World Travel was insufficient to allow World Travel to fully assess the levels of expertise of possible panel counsel. Therefore, Ms. Coleman-Tucker now provided the name of a single attorney who she believed had the skills and expertise to defend the *Ahrendsen* Litigation. Hanover's recommended attorney's website biography referenced no expertise or experience in class actions or ESOP-related matters. Nonetheless, Ms. Coleman-Tucker, on behalf of Hanover, suggested that World Travel schedule a telephone conference to interview this attorney.

61.     World Travel's Corporate Counsel agreed to speak with the attorney recommended by Hanover. When World Travel's Corporate Counsel spoke with Hanover's recommended attorney on May 24, 2021, she learned that the attorney had little to no actual experience defending these types of ERISA claims relating to an ESOP transaction and wanted to hire several experts to perform valuation and other work to "get prepared." Hanover's recommended attorney stated that he needed at least three (3) months to complete that preparatory work to be able to defend the *Ahrendsen* Litigation.

62.     After World Travel's Corporate Counsel expressed her dissatisfaction to Hanover regarding the inadequacy of its recommended attorney, including that it was unacceptable to retain a lawyer who had no experience in the practice area and would need three months to get up to

12

EXHIBIT A

speed, Hanover continued to provide names of attorneys on its approved panel counsel list who were unqualified to defend the *Ahrendsen* Litigation.

63.     On May 25, 2021, Hanover sent World Travel a list of eight lawyers to consider.

64.     On May 27, 2021, Hanover sent World Travel a list of another dozen or more lawyers, who Hanover considered "ERISA specialists." That list came with a nine (9) page list of representative ERISA cases on which these attorneys' firm had worked. Only one case on this nine (9) page list of cases was related to a disputed ESOP transaction like the one in the *Ahrendsen* Litigation.

65.     Notably, these lawyers Hanover suggested on May 27, 2021 were not on Hanover's "approved list of panel counsel," but somehow, without explanation, Hanover would agree to use this set of not previously-approved lawyers but not the lawyers proposed by World Travel.

66.     Hanover's provision of this list of potential lawyers waives Hanover's prior position that an insured must use a lawyer on Hanover's "approved list of panel counsel," but rather apparently, according to Hanover, must use a lawyer who Hanover approves for wholly subjective reasons. Hanover's revised position is likely related to the fact that Hanover believed it could have some level of control over these lawyers because if they played along, Hanover would send them more business in the future, despite the fact that said lawyers' duty of loyalty and fidelity would be to the Insured Individuals, not Hanover.

67.     Hanover essentially gave the Insured Individuals a menu of unsatisfactory options to choose from, with no legitimate basis for limiting the pool of proposed attorneys to those it suggested, requiring the Insured Individuals to conduct research and interviews to try to figure out if one of the attorneys was qualified to handle the case.

EXHIBIT A

68.     It became clear that Hanover, including Ms. Coleman-Tucker and Ms. Graziani, were not familiar with the types of unique claims alleged in the *Ahrendsen* Litigation and the type of attorney needed to appropriately defend them.

69.     It became clear that Hanover's list of approved panel counsel on its "fiduciary matters" list in Pennsylvania and other non-approved lawyers suggested by Hanover were general employment and benefits lawyers. Based upon these attorneys' biographies, representative matters and other information, they simply did not have the necessary level of experience and expertise to defend the *Ahrendsen* Litigation. Most of these attorneys do not represent that they have any ESOP litigation experience at all, nor any experience in a case relating to a disputed valuation in an ESOP Transaction.

70.     Hanover's provision of names upon names of lawyers, none of whom had the requisite experience and expertise, made it clear that Hanover did not fully comprehend the type of lawyer necessary to defend the *Ahrendsen* Litigation.

71.     Hanover's provision of names upon names of lawyers, including lawyers who were not on Hanover's list of approved panel counsel for "fiduciary matters" in Pennsylvania, made it clear that Hanover was most interested in finding lawyers who it could "control" at minimum cost, as opposed to lawyers most qualified to defend the interests of the Insured Individuals.

72.     When the Insured Individuals identified these issues and asked Hanover to propose lawyers with the specific type of experience and expertise necessary to defend the *Ahrendsen* Litigation, Hanover failed to do so.

73.     When the Insured Individuals proposed a reasonable resolution to be able to continue being represented by Holland & Knight and the Groom Law Group respectively, Hanover rejected the offer out of hand.

14

EXHIBIT A

74.     Hanover's only proposed solution to the Insured Individuals was to agree to be represented by unqualified, inexperienced lawyers in the *Ahrendsen* Litigation, to which the Insured Individuals refused to agree.

75.     The Insured Individuals refused to accept the appointment of unqualified, inexperienced lawyers, including where they faced potential exposure to liability in excess of the Hanover Policy.

76.     In response to the Insured Individuals' reasonable requests to identify competent, qualified and experienced attorneys to represent them in the *Ahrendsen* Litigation, which Hanover failed to do, and in the alternative to allow them to continue to be represented by Holland & Knight and the Groom Law Group respectively, Hanover used bully tactics to assert that the Insured Individuals were failing to cooperate with Hanover, and therefore, Hanover was excused from its obligations to defend and indemnify the Insured Individuals in the *Ahrendsen* Litigation.

77.     In furtherance of its bully tactics, rather than work with the Insured Individuals or request any information about the underlying *Ahrendsen* Litigation, Ms. Graziani, sent letters to Wells and Paredes in July and August 2021, accusing them of failing to cooperate with Hanover and demanding that they execute Claim Withdrawal Releases.

78.     Wells and Paredes did not execute the Claim Withdrawal Releases and continued to try to work with Hanover to provide it requested information and find a reasonable resolution to their disagreement, including through the retention of coverage counsel.

79.     Then, after communications with the Insured Individuals' coverage counsel to obtain additional information, on February 11, 2022, Hanover issued a revised coverage letter, authored by Ms. Graziani in Hanover's Itasca, Illinois office, further setting forth its refusal to defend and indemnify the Insured Individuals based upon an alleged lack of cooperation.

EXHIBIT A

80.     Hanover has not identified any statute or case law which releases it from its obligations under the Hanover Policy to defend and indemnify the Insured Individuals because they refuse to accept unqualified, inexperienced lawyers.

81.     Hanover has not identified any statute or case law which holds that an insured has failed to cooperate with its insurer by trying to retain competent, qualified and experienced lawyers to defend a claim against it.

82.     In October 2022, the parties in the *Ahrendsen* Litigation reached an agreement in principle to settle and resolve the *Ahrendsen* Litigation. A Joint Notice of Settlement was filed in the *Ahrendsen* Litigation on November 3, 2022. On January 25, 2023, Plaintiffs filed an Unopposed Motion and Incorporated Memorandum of Law for Preliminary Approval of Settlement and Certification of Settlement Class stating that subject to the Court's approval, the parties have settled the *Ahrendsen* Litigation for a cash payment of $8,700,000 (the "Settlement Amount").

83.     To date, Hanover has denied the Individual Insureds demand to participate in the settlement of the *Ahrendsen* Litigation up to the limit of liability of the Hanover Policy for the World Travel Claim.

84.     To date, Hanover has refused to pay Holland & Knight directly and/or to reimburse Wells for more than $500,000 in Defense Expenses paid to date to defend the *Ahrendsen* Litigation for the World Travel Claim.

85.     To date, Hanover has refused to pay the Groom Law Group directly and/or to reimburse Paredes for more than $390,000 in Defense Expenses paid to date to defend the *Ahrendsen* Litigation for the World Travel Claim.

EXHIBIT A

86.     Accordingly, Plaintiffs seek a declaratory judgment that Hanover is obligated to defend and indemnify Wells and Paredes in the *Ahrendsen* Litigation under the Hanover Policy, including for all Defense Expenses incurred through representation of Wells and Paredes by Holland & Knight and Groom Law Group, respectively, and payment of the Settlement Amount up to the limit of liability of the Hanover Policy.

87.     Additionally, Plaintiffs seek a judgment against Hanover for breach of contract and bad faith, including damages, interest, attorneys' fees and costs of this suit, arising from Hanover's breach of contract and bad faith.

**COUNT I**
**Request for Declaratory Judgment under 735 ILCS 5/2-701**

88.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 87 as though fully set forth herein.

89.     The assertion by Hanover that it does not have an obligation to defend or indemnify Wells and Paredes under the Hanover Policy in the *Ahrendsen* Litigation for the World Travel Claim creates an actual controversy between the parties.

90.     As the policyholder of the Hanover Policy, World Travel has an actual interest in the outcome of this case and the Court's determination regarding Hanover's defense and indemnity obligations under the Hanover Policy.

91.     Pursuant to the Fiduciary Liability Coverage Part of the Hanover Policy, Hanover has an obligation to defend and indemnify Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim.

92.     Alternatively, World Travel, Wells and Paredes are entitled to a declaratory judgment setting forth the respective rights and obligations of the parties under the Hanover Policy relating to the World Travel Claim.

EXHIBIT A

WHEREFORE, Plaintiffs World Travel, Inc., James A. Wells, and Miguel Paredes, respectfully request:

i.    A declaration pursuant to 735 ILCS 5/2-701 that James A. Wells and Miguel Paredes are Insureds under the Hanover Policy;

ii.    A declaration pursuant to 735 ILCS 5/2-701 that, under the Hanover Policy, Hanover is obligated to defend and indemnify James A. Wells and Miguel Paredes in the *Ahrendsen* Litigation for the World Travel Claim;

iii.    A declaration pursuant to 735 ILCS 5/2-701 that, under the Hanover Policy, Hanover is obligated to appoint competent, qualified and experienced counsel to defend James A. Wells and Miguel Paredes in the *Ahrendsen* Litigation for the World Travel Claim;

iv.    A declaration pursuant to 735 ILCS 5/2-701 that, Hanover has breached its obligation to appoint competent, qualified and experienced counsel to defend James A. Wells and Miguel Paredes in the *Ahrendsen* Litigation for the World Travel Claim;

v.    A declaration pursuant to 735 ILCS 5/2-701 that, upon Hanover's breach of its obligation to appoint competent, qualified and experienced counsel to defend James A. Wells and Miguel Paredes in the *Ahrendsen* Litigation for the World Travel Claim, James A. Wells and Miguel Paredes may choose their own counsel to defend them in the *Ahrendsen* Litigation at Hanover's expense;

vi.    A declaration pursuant to 735 ILCS 5/2-701 that, under the Hanover Policy, Hanover is obligated to reimburse James A. Wells and Miguel Paredes for all Defense Expenses incurred in the *Ahrendsen* Litigation for the World Travel Claim up to the limit of liability of the Hanover Policy;

vii.    A declaration pursuant to 735 ILCS 5/2-701 that, under the Hanover Policy, Hanover is obligated to reimburse James A. Wells and Miguel Paredes for the Settlement Amount in the *Ahrendsen* Litigation for the World Travel Claim up to the limit of liability of the Hanover Policy;

viii.    In the alternative, a declaration, pursuant to 735 ILCS 5/2-701, of the respective rights, obligations, and responsibilities of the parties pursuant to the Hanover Policy;

ix.    Reimbursement of its costs and fees to the extent permitted by law;

x.    Such other and further relief as this Court deems just.

EXHIBIT A

## COUNT II
### Breach of Contract

93.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 92 as though fully set forth herein.

94.     On or about October 1, 2020, World Travel obtained the Hanover Policy from Hanover and commenced performance under the Hanover Policy, including through consideration of the payment of all premiums due.

95.     The Hanover Policy constitutes a valid and enforceable contract.

96.     The Hanover Policy contains an implied duty of good faith and fair dealing.

97.     At all times relevant to this Complaint, the Hanover Policy was in full force and effect.

98.     World Travel has performed all of its obligations under the Hanover Policy.

99.     Hanover breached the Hanover Policy by failing to appoint a competent, qualified and experienced attorney to defend the Insured Individuals in the *Ahrendsen* Litigation for the World Travel Claim.

100.    Hanover breached the Hanover Policy by failing identify an attorney who was experienced in this specific type of matter and qualified to defend the Insured Individuals in the *Ahrendsen* Litigation for the World Travel Claim.

101.    Hanover breached the Hanover Policy by requiring its Insured Individuals to review a menu of unsatisfactory options, placing the burden on its Insured Individuals to pick from among numerous attorneys, all of whom appeared unqualified to defend the Insured Individuals in the *Ahrendsen* Litigation for the World Travel Claim.

102.    Hanover breached the Hanover Policy by placing its own interests ahead of the interests of the Insured Individuals for the World Travel Claim.

EXHIBIT A

103.    Hanover breached the Hanover Policy by using bully tactics, based upon an alleged lack of cooperation, to try to require Wells and Paredes to release their insurance claim, rather than advocate for themselves to be able to have competent, qualified and experienced counsel defend them in the *Ahrendsen* Litigation for the World Travel Claim.

104.    Hanover breached the Hanover Policy by failing to adequately defend Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim.

105.    Hanover breached the Hanover Policy by failing to satisfy its obligation to pay what is owed under the Hanover Policy for the Defense Expenses of the Insured Individuals in the *Ahrendsen* Litigation for the World Travel Claim.

106.    Hanover breached the Hanover Policy by failing to satisfy its obligation to pay what is owed under the Hanover Policy for the Settlement Amount in the *Ahrendsen* Litigation up to the limit of liability of the Hanover Policy for the World Travel Claim.

107.    Hanover's breaches of the Hanover Policy have proximately caused damages to World Travel, Wells and Paredes in an amount of attorneys' fees and costs incurred in the *Ahrendsen* Litigation, the Settlement Amount of the *Ahrendsen* Litigation, plus consequential damages and costs of this suit, to be determined at trial.

WHEREFORE, Plaintiffs World Travel, Inc., James A. Wells, and Miguel Paredes, requests that this Court enter judgment in favor of World Travel, Inc., James A. Wells, and Miguel Paredes, and against Defendant, Hanover Insurance Company, on Count II of the Complaint by awarding Plaintiffs their damages, interest, and costs resulting from Hanover's breaches of the Hanover Policy, including but not limited to their Defense Expenses and Settlement Amount expended in the *Ahrendsen* Litigation, up to the limit of liability of the Hanover Policy, and granting such other and further relief as this Court deems appropriate under the circumstances.

EXHIBIT A

## COUNT III
### Bad Faith Pursuant to 215 ILCS 5/155

108.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 87 and 94 through 107 as though fully set forth herein.

109.     Pursuant to Section 155 of the Illinois Insurance Code, "[i]n any action by or against a[n] [insurance] company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorneys fees, other costs, plus an amount not to exceed any one of the following amounts:

    a.   60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

    b.   $60,000;

    c.   The excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

110.     World Travel, as the Named Insured on the Hanover Policy, has an interest in whether Hanover is obligated to defend and indemnify Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim.

111.     Wells and Paredes, as Insured Individuals, have an interest in whether Hanover is obligated to defend and indemnify them in the *Ahrendsen* Litigation for the World Travel Claim.

112.     By failing to defend and indemnify Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim, without reasonable justification, Hanover has acted in a vexatious and unreasonable manner.

EXHIBIT A

113.    By failing to identify competent, qualified and experienced counsel to defend Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim, without reasonable justification, Hanover has acted in a vexatious and unreasonable manner.

114.    By failing to cooperate with the Insured Individuals to find a reasonable resolution to their disagreement over the handling of the World Travel Claim, Hanover has acted in a vexatious and unreasonable manner.

115.    By informing the Insured Individuals that Hanover would agree to pay unqualified attorneys who were not on its approved list to defend them in the *Ahrendsen* Litigation, but not the competent, qualified and experienced attorneys proposed by the Insured Individuals, Hanover acted in a subjective manner that was vexatious and unreasonable.

116.    By requiring the Insured Individuals to pay for their own Defense Expenses and Settlement Amount, without any reasonable participation from Hanover, as World Travel paid for in its premium for the Hanover Policy, Hanover has acted in a vexatious and unreasonable manner.

117.    For all of these above-referenced reasons, Hanover has acted in bad faith in handling the World Travel Claim, including in Illinois through the misconduct of Hanover's representatives.

118.    By requiring World Travel to file this lawsuit to obtain the full coverage to which it is entitled under the Hanover Policy, Hanover has acted in bad faith, including in Illinois through the misconduct of Hanover's representatives.

WHEREFORE, Plaintiffs World Travel, Inc., James A. Wells, and Miguel Paredes, requests that this Court enter judgment in favor of World Travel, Inc., James A. Wells, and Miguel Paredes, and against Defendant, Hanover Insurance Company, on Count III of the Complaint for

EXHIBIT A

bad faith pursuant to 215 ILCS 5/155 and an award of their reasonable attorneys' fees and costs, in addition to $60,000, and such other and further relief as this Court deems just and proper.

## COUNT IV
### Bad Faith Pursuant to 42 Pa. C.S. § 8371

119.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 87 and 94 through 118 as though fully set forth herein.

120.    To the extent that Pennsylvania law applies to this dispute, pursuant to 42 Pa. C.S. § 8371:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

121.    World Travel, as the Named Insured on the Hanover Policy, has an interest in whether Hanover is obligated to defend and indemnify Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim.

122.    Wells and Paredes, as Insured Individuals, have an interest in whether Hanover is obligated to defend and indemnify them in the *Ahrendsen* Litigation for the World Travel Claim.

123.    By failing to defend and indemnify Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim, without reasonable justification, Hanover has acted in a vexatious and unreasonable manner.

124.    By failing to identify competent, qualified and experienced counsel to defend Wells and Paredes in the *Ahrendsen* Litigation for the World Travel Claim, without reasonable

EXHIBIT A

justification, Hanover has acted without a reasonable basis for denying the benefits of the Hanover Policy and with knowledge or reckless disregard of the lack of a reasonable basis for denying the World Travel Claim.

125.    By failing to cooperate with the Insured Individuals to find a reasonable resolution to their disagreement over the handling of the World Travel Claim, Hanover has acted without a reasonable basis for denying the benefits of the Hanover Policy and with knowledge or reckless disregard of the lack of a reasonable basis for denying the World Travel Claim.

126.    By informing the Insured Individuals that Hanover would agree to pay unqualified attorneys who were not on its approved list to defend them in the *Ahrendsen* Litigation, but not the competent, qualified and experienced attorneys proposed by the Insured Individuals, Hanover has acted without a reasonable basis for denying the benefits of the Hanover Policy and with knowledge or reckless disregard of the lack of a reasonable basis for denying the World Travel Claim.

127.    By requiring the Insured Individuals to pay for their own Defense Expenses and Settlement Amount, without any reasonable participation from Hanover, as World Travel paid for in its premium for the Hanover Policy, Hanover has acted without a reasonable basis for denying the benefits of the Hanover Policy and with knowledge or reckless disregard of the lack of a reasonable basis for denying the World Travel Claim.

128.    For all of these above-referenced reasons, Hanover has acted in bad faith in handling the World Travel Claim, including in relation to the Hanover Policy issued to World Travel in Pennsylvania.

EXHIBIT A

129.    By requiring World Travel to file this lawsuit to obtain the full coverage to which it is entitled under the Hanover Policy, Hanover has acted in bad faith, including in relation to the Hanover Policy issued to World Travel in Pennsylvania.

WHEREFORE, Plaintiffs World Travel, Inc., James A. Wells, and Miguel Paredes, requests that this Court enter judgment in favor of World Travel, Inc., James A. Wells, and Miguel Paredes, and against Defendant, Hanover Insurance Company, on Count IV of the Complaint for bad faith pursuant to 42 Pa. C.S. § 8371 and an award of its interest on the amounts paid to date, punitive damages, and their reasonable attorneys' fees and costs, in addition to such other and further relief as this Court deems just and proper.

WORLD   TRAVEL,   INC.,   JAMES   A.
WELLS AND MIGUEL PAREDES,
*Plaintiffs*

By: */s/*       Blake A. Roter
          One of Their Attorneys

Christopher E. Kentra (ckentra@burkelaw.com)
Blake A. Roter (broter@burkelaw.com)
Jolisa Warmack (jwarmack@burkelaw.com)
**BURKE, WARREN, MACKAY & SERRITELLA, P.C.**
330 N. Wabash, Suite 2100
Chicago, IL 60611
Phone: 312-840-7000
Fax: 312-840-7900
Firm ID: 41704

EXHIBIT A